# RICHARDSON *vs.* WILKINS.

Where a defendant is examined as a witness by the plaintiff, if his testimony is merely responsive to the inquiries put to him, or is necessary to explain or qualify his own answers to those inquiries, or to discharge when those answers would otherwise charge him, the plaintiff has no right to be sworn as a witness on his own behalf, under section 395 of the code.

If the defendant goes beyond these points, the plaintiff can be a witness only in respect to the excess.

The right of one party, by his own oath, to contradict the other, who has been put under a compulsory examination, is in derogation of the common law, and should not receive a loose construction.

Where a defendant is charged with a fraudulent suppression of the truth, upon an exchange of horses, and the plaintiff, by a compulsory examination, has drawn from him statements from which, unexplained, a concealment of an important defect in the horse exchanged by him may be inferred, it is competent for him to state the circumstances of the transaction, so far, and so far only, as to explain his answer, and show the reason for the concealment.

Where the plaintiff is examined as a witness in his own behalf under § 395 of the code, and the defendant, instead of objecting to so much of the evidence given

Richardson *v.* Wilkins.

by the plaintiff as is illegal, objects, generally, that the plaintiff cannot be a witness, the objection will not avail if any part of the plaintiff's testimony is competent.

THIS was an appeal from a judgment of the county court of Fulton county, affirming the judgment of a justice. The complaint was, that the defendants warranted a certain brown horse, on an exchange of horses between the parties, to be sound, and not to have a spavin on either of his hind legs, and that the defendant expressly stated that there was no unsoundness of the horse except what was plainly to be seen ; and upon which representation the plaintiff relied ; whereas he was unsound, and had a spavin on each hind leg, which were not plain to be seen, of which defects the plaintiff had no knowledge, and the defendant did not inform the plaintiff, but concealed the defects. The defendant denied all the allegations, and alleged that the plaintiff took the horse with all defects. The cause was tried by jury. The plaintiff called the defendant as a witness, who on his direct examination by the plaintiff, testified of whom he purchased the horse ; that he kept him nine months and then let the plaintiff have him ; and that he did not tell the plaintiff he was spavined. The defendant's own counsel then examined him, and he testified to many particulars of the trade or exchange, including all the conversation between the parties, price, contract, and what the parties did at the time ; the substance of which was that they traded, and that, at the request of the plaintiff, he let him take the horse and drive him home ; the defendant telling the plaintiff if he concluded to trade, to put the other horse in the stable in lieu of the brown horse. That the defendant put the harness on the brown horse, and the plaintiff asked him if he was sound ; that the defendant replied his wind was sound ; that the plaintiff then asked him what he meant by that, and he added, " I told him that I meant he was sound except what was to be seen, or plain to be seen ; we stood a short distance from the horse ; I supposed the plaintiff cast his eye around the horse, and said, ' It appears to me he has thundering big gambrel joints,' and further said to me, ' he is not spavined, is he ?' I said, examine for yourself; the plaintiff stepped to the horse

Richardson *v.* Wilkins.

and went to put his hand on the inside of his leg where a spavin comes; as he touched him the horse stepped round. I stepped to the horse to make him stand still; the plaintiff looked at that side and then stepped round and looked at the other side. I think the plaintiff said he believed he was. The plaintiff asked me if he was ever lame; I said he had not been while I had had him, with his hind feet. The plaintiff then asked me if I would warrant him sound; I told him I would not warrant him sound a minute," &c. He further stated that the plaintiff gave him a note for $30 as boot money between the horses, which he had paid; that the spavins on the horse's legs were plain to be seen, and that the plaintiff did see them, and that one, by putting his hand on the horse's leg, as the plaintiff did, could feel the bunches plainly; that the plaintiff dealt in horses considerably; and that the defendant made no statement during the trade, except what he now related. The plaintiff then offered himself as a witness in his own behalf, which was objected to by the defendant, on the ground that he could not be sworn as a witness; also that he could not be sworn as a witness and be examined in his own behalf, to contradict or rebut what the defendant had testified to, because he did not testify to any new matter not responsive to the inquiries put by the plaintiff; nor to any new matter not necessary to explain or qualify his answers to questions put to him by the plaintiff; or to matters which would discharge him when his answers would charge himself in reply to inquiries put by the plaintiff. These objections were overruled; and the counsel for the plaintiff asked him, "Did you put your hands on the brown horse's legs where a spavin comes?" which was also objected to on the same ground of his objection to the offer to swear the witness, and overruled, and the defendant excepted. He was also asked if he saw a spavin; also whether the defendant said any thing about the gambrel joints being natural; and whether the defendant, at the time of the trade, said any thing more than he had stated. To each of these questions as they were put the same objection was made, and was overruled, and the defendant excepted. And in his answers to said questions the plaintiff

flatly contradicted most of the material statements testified to by the defendant.

Other witnesses on the part of the plaintiff gave testimony upon the questions as to the unsoundness of the horse, the difficulty of discovering it, and the knowledge the defendant had thereof.

The defendant offered to show the value of the horse he had of the plaintiff, which was objected to, and the evidence overruled, and the defendant excepted.

The defendant moved for a nonsuit, which motion was denied. The jury found a verdict for the plaintiff; and the defendant appealed to the county court, where the judgment was affirmed. The defendant appealed to this court.

*W. Wait*, for the appellant.

*Fraser & Stewart*, for the respondent.

*By the Court*, HAND, P. J. The evidence of the value of the horse received by the defendant in exchange for the horse in question, was properly rejected. There is no pretense of any fraud or warranty by the plaintiff, in relation to the horse the defendant received of him ; and if the defendant contracted that the brown horse was sound, when he was° not, he should make good the difference. (*Cary* v. *Gruman*, 4 *Hill*, 625.) The price paid may be evidence of value, it seems, especially when no other proof is given ; but here was an exchange, and no price was named by the parties. But the objections which the counsel for the defendant has most fully pressed upon our consideration, are in relation to the admissibility of the evidence of the plaintiff.

The cause of action is not very clearly set forth in the complaint, but it seems to be for a breach of warranty, and also for fraudulent concealment ; or rather for suppressing the truth ; for it is not stated that he concealed the defects in any other mode. As I understand the case, I think it very clear there could have been no recovery without the testimony of the parties.

It is perfectly evident that the statement drawn out from the defendant by the other side, that he did not inform the plaintiff that the horse was spavined, was important, to prove a fraudulent concealment. To counteract this, the defendant went into an explanation at once ; supposing, no doubt, that the plaintiff intended to prove by other witnesses, unsoundness, and knowledge of that fact by the defendant, and then to insist that he was entitled to recover. If this was the plan, and the subsequent course of the trial confirms the suspicion of the defendant, it was a pettifogging attempt to recover by obtaining a partial and *ex parte* view of the facts, through the forms of law; and it is important to the rights of citizens and the course of justice, to know if this be one of the rules of evidence prescribed by the code. Section 395 of the code, authorizes a party examined by. his adversary, to be also examined on his own behalf. "But if he testify to any new matter not responsive to the inquiries put to him by the adverse party, or necessary to explain or qualify his answers thereto, or discharge when his answers would charge himself, such adverse party may offer himself as a witness on his own behalf in respect to such new matter, and shall be so received." If parties litigant, in the excitement of a trial are to enter the list as witnesses against each other in their own causes, it is certainly necessary to understand the rules by which this novel mode of eliciting truth is to be governed.

By the former practice, the right of the party to discharge himself, when he was charged by the admission in his own answer, was very much restricted. (*Thompson* v. *Lambe*, 7 *Ves.* 588. *Robinson* v. *Scotney*, 19 *id.* 584. *Ridgeway* v. *Darwin*, 7 *id.* 404. *Blount* v. *Burrow*, 1 *Ves. jun.* 546. *Hart* v. *Ten. Eyck*, 2 *John. C. R.* 62.) In England, if the circumstances of the charge and discharge were so immediately connected as to form, in fact, only parts of the very same transaction, the charge and avoidance were taken together. The rule is full as liberal in this state. (*Woodcock* v. *Bennet*, 1 *Cowen*, 743. *Hart* v. *Ten Eyck, in the Court of Errors, there cited. Clason* v. *Morris*, 10 *John. R.* 542. *Jackson* v. *Hart*, 11 *Wend.* 343. *Forsyth* v. *Clark*, 3 *id.* 643. *Stafford*

v. *Bryan*, 1 *Paige*, 239.)  And the rule in chancery, seems to
be well settled, that when the plaintiff reads a part of the
defendant's answer to support his case, as to fix the defendant
with an admission, he must also read the explanations and
qualifications by which the admission may be accompanied;
although they be contained in a distinct passage. (*See Bartlett*
v. *Gillard*, 3 *Russ.* 157; *Miller* v. *Gow*, 1 *Y. & Coll. C. C.*
56; 2 *Dan. Pr.* 978.)  It must be read so as to complete the
immediate subject to which the defendant is answering. (*Kent,*
*Ch.* 2 *John. Ch. R.* 91.) The language of § 395, is certainly suffi-
ciently broad to receive as liberal construction.  It is not
probable that the legislature intended a party should be com-
pelled to testify whether he had defrauded the opposite party.
If so, his right of explanation should be as great, at least, as in
cases of accounting by trustees, &c., under the former system.
And it seems clear to me, that if his testimony is merely re-
sponsive to the inquiries put to him; or necessary to explain
or qualify his own answers to those inquiries; or necessary to
discharge when those answers would otherwise charge him; his
adversary cannot be sworn.  And if he go beyond these, his
opponent can be a witness only in respect to the excess.  This
right of one party, by his own oath, to contradict the other, who
has been put under a compulsory examination, is in derogation
of the common law, and should not receive a loose construction.

In this case, as the defendant was charged with fraud, and
the plaintiff, by a compulsory examination, had drawn from him
statements from which, isolated and unexplained as they were, a
suppression of the truth—a concealment of an important defect
in the article—could be inferred, it was competent for him to
state the circumstances of the same transaction, so far, and only
so far, as to explain his answer and show the reason why he
did not inform the plaintiff of the unsoundness.  The plaintiff
put only what questions he pleased, and obtained concise and
direct answers.  The rules of evidence and forms of law will
become mere pitfalls, if the party cannot explain these answers,
by giving so much of the facts of that particular transaction, as
is necessary to place his answer in its true light, without making a

witness of his adversary. And a cunning party will almost always be able to obtain the privilege of testifying for himself, or put his adversary in great jeopardy by an adroit and unfair examination. The additional statements of the defendant, therefore, as to what did take place between the parties on the subject of the unsoundness of the animal, were only in explanation of his direct examination. His testimony to their conversation about his soundness—that the plaintiff saw the spavins on the legs, and put his hand on the spot ; that the plaintiff inquired whether he was spavined, and the answer of the defendant—were all of this character. It follows, that the plaintiff was not authorized to contradict those statements. He must be content so far, with the case as made by the testimony of his adversary. But the defendant went farther. A party called under this section, cannot, by way of explanation, give evidence in his own behalf, to his cause of action or defense, (as the case may be,) generally ; unless his examination has been to that extent. The antidote must be confined to the subject matter of the examination ; and as to that, only as respects matters of fact. The statements of the defendant as to the amount of the boot money on the exchange —the manner in which it was secured and afterwards paid—and the skill the plaintiff possessed in such matters, &c., and also, I am inclined to think, the fact that he refused to warrant the horse to be sound—were all new matter, or in relation to other branches of the case, and about which he had not been questioned ; and as to these, the plaintiff had a right to be examined. If the latter had stopped there, his examination would have been unobjectionable ; but he did not confine himself to this new matter in the voluntary testimony of the defendant, and which the defendant had no right to make as mere explanation, under the 395 section ; but he contradicted some of the statements which the defendant had made, and which, as we have seen, he had a right to make to explain and qualify his answers to the questions put to him by the plaintiff, and for the purpose of rebutting any presumption against him that would naturally arise from his answer on his examination by the plaintiff.

The judgments below must therefore have been reversed if

these objections had been sufficiently taken. I was inclined to consider, as this was a trial in a justice's court, that they were; but my associates think the defendant failed to take the precise objection to the proceedings on the part of the plaintiff, which, by the rules we have here laid down, were erroneous. And, in truth, the objections, both to the plaintiff being sworn, and to the questions put to him, do seem to have been, that the plaintiff could not be sworn at all. We have seen that, as to some of the statements made by the defendant, the plaintiff was at liberty to be a witness for himself. If the defendant had objected to so much of the evidence as was illegal, and for the right reason, the judgment would clearly have been erroneous. But a majority of the court, at least, think he did not do so, and therefore his objections do not avail him.

Judgment affirmed.

[WASHINGTON GENERAL TERM, May 2, 1853. _Hand, Cady, C. L. Allen_ and _James,_ Justices.]